NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH A. BECKER and RAYMOND BECKER,<br><br>Plaintiffs,<br><br>v.<br><br>SMITH & NEPHEW, INC., ABC CORP. I-X, JOHN DOE I-X, AND JANE DOE I-X (said names being fictitious and unknown),<br><br>Defendants. | OPINION<br><br>Civ. No. 14-5452 (WHW)(CLW) |

**Walls, Senior District Judge**

Plaintiffs Deborah Becker and Raymond Becker bring this products liability case, involving a hip implant, against Defendant Smith & Nephew, Inc. Defendant removed the case from New Jersey Superior Court and now moves to dismiss. Defendant argues that the complaint's allegations are too vague to meet federal pleading standards, and that New Jersey law bars several causes of action. Decided without oral argument under Fed. R. Civ. P. 78, Defendant's motion is granted. Plaintiffs are granted leave to file an amended complaint within 90 days from the date of this Opinion.

**BACKGROUND**

Plaintiffs filed a complaint in New Jersey Superior Court on May 20, 2014. ECF No. 1-1. The factual allegations of the complaint are that "Defendants, Smith & Nephew, Inc. and/or ABC Corp. I-X . . . owned, designed, manufactured, assembled, packaged, repaired, modified, marketed, sold and/or distributed or otherwise placed in the stream of commerce a certain

1

product more particularly known as a hip implant." Compl. ¶ 1. "On or about June 1, 2012, the Smith & Nephew, Inc. hip implant was voluntarily recalled." *Id.* ¶ 3. "Plaintiff, Deborah A. Becker, only received notification of the voluntary recall on or about April 2013." *Id.* ¶ 4. "On or about August 16, 2007, plaintiff, Deborah A. Becker, underwent hip surgery at which time a Nephew & Smith, Inc. [*sic*] hip implant was implanted." *Id.* ¶ 5. "On or about September 6, 2013, plaintiff, Deborah A. Becker, was caused to undergo surgery to remove and replace the defective Smith & Nephew, Inc. hip implant as blood work results revealed high levels of cobalt toxicity in her system . . ." *Id.* ¶ 6. The hip implant caused Deborah Becker to suffer injuries. *Id.* ¶ 7.

The complaint lists six counts. Though none of the headings is expressly labeled with a cause of action, the Court interprets the complaint as sounding in negligence (First Count), loss of consortium (Second Count), strict liability under the New Jersey Products Liability Act (Third Count), breach of express and/or implied warranties (Fourth Count), failure to warn (Fifth Count), and punitive damages (Sixth Count).

Defendant removed the action to this Court on August 29, 2014, ECF No. 1, and now moves to dismiss. ECF No. 4. Defendant argues that the complaint does not allege facts sufficient to support the products liability and breach of express warranty claims; that the New Jersey Products Liability Act bars the claims for negligence, breach of implied warranty, and common law failure to warn; and that the claims for loss of consortium and punitive damages are derivative and must be dismissed along with the others.

Plaintiffs did not timely respond to the motion. On December 3, 2014, after their response to the motion was due, Plaintiffs mailed the Court a short letter asking the Court to deny the motion. Citing no case or other authority, the letter attached what it alleged were

medical records of Deborah Becker and an earlier letter from Plaintiffs' counsel to Defendant's counsel describing those records. Plaintiffs later filed the letter and attachments on ECF. ECF No. 9.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

## DISCUSSION

### The New Jersey Products Liability Act Does Not Permit Plaintiffs' Causes of Action for Negligence and Breach of Implied Warranty

The New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 to -11 ("PLA") is the exclusive remedy for personal injury claims arising out of product use. *See, e.g., Koruba v. American Honda Motor Co., Inc.*, 935 A.2d 787, 795 (N.J. App. Div. 2007). The PLA "governs any claim or action for harm caused by a product, irrespective of the theory underlying the claim,

3

except actions for breach of an express warranty." *Id.* (citing N.J.S.A. 2A:58C–1(b)(3) and cases). The PLA "no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for harm, including personal injury, caused by a defective product or an inadequate warning." *Id.*; *see also Fidelity and Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F.Supp.2d 441, 447 (D.N.J. 2013). Plaintiffs' causes of action for negligence and breach of implied warranty must be dismissed.

**The Complaint Does Not State Sufficient Facts to Support a Claim under the PLA**

The PLA adopts a strict liability standard that focuses on "the actual condition of the product" rather than on the reasonableness of the manufacturer's conduct. *Coffman v. Keene Corp.*, 628 A.2d 710 (N.J. 1993). In order to state a claim for strict liability under the PLA, a plaintiff must demonstrate that "the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." *Koruba*, 935 A.2d at 795, citing N.J.S.A. 2A:58C–2; *see also Cornett v. Johnson & Johnson*, 998 A.2d 543, 561-62 (N.J. App. Div. 2010) *aff'd as modified*, 48 A.3d 1041 (N.J. 2012). A product liability claim requires proof that (1) the product was defective, (2) the defect existed when the product left the manufacturer's control, (3) the defect proximately caused injuries to the plaintiff, and (4) the plaintiff was a reasonably foreseeable or intended user. *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008) (citing *Myrlak v. Port Auth. of N.Y. & N.J.*, 723 A.2d 45 (N.J. 1999)). "The mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." *Myrlak*, 723 A.2d at 52 (citation omitted).

The barebones factual allegations of the present complaint are insufficient to support any theory under the PLA.

4

**Manufacturing Defect**

A manufacturing defect is a deviation "from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. 2A:58C-2a; *see also Myrlak*, 723 A.2d at 51.

Plaintiffs do not allege facts to indicate that this particular implant deviated from the manufacturer's specifications or otherwise identical units. The complaint does not allege that a defect existed when the product left the manufacturer's control, specify how the defect proximately caused injuries to Deborah Becker, or identify her as a reasonably foreseeable end user of this particular device. The specific name of the implant does not appear in the complaint, nor does the medical condition which it was intended to treat. Though alleging "high levels of cobalt toxicity in [Deborah Becker's] system," the complaint does not allege that the product was the proximate cause of this condition, or that the high levels caused a specific injury. Compl. ¶ 6. Apart from labeling the product a "Smith & Nephew hip implant," Plaintiffs do not expressly identify Defendant's relationship to the product or role in the chain of commerce, vaguely stating that either Smith & Nephew or a fictitious defendant did one of a number of activities, including and potentially limited to "own[ing]" or "packag[ing]" the product. *Id.* ¶¶ 1-2.

**Design Defect**

A design defect is something that renders a product not reasonably fit, suitable or safe for its intended purpose. *N.J.S.A.* 2A:58C-2; *see Paredes v. Ford Motor Co.,* 2008 WL 5156473, at *4 (N.J. App. Div. 2008). The PLA further defines a design defect as a danger inherent in a

5

product that has been manufactured as intended, when that danger, as a public policy matter, is greater than can be justified by the product's utility. *Id.* To evaluate whether the design was defective, New Jersey courts perform a risk-utility analysis that considers seven factors:

> 1. The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> 2. The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> 3. The availability of a substitute product that would meet the need and not be as unsafe.
> 4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> 5. The user's ability to avoid danger by the exercise of care in the use of the product.
> 6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
> 7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*See Sampson v. Glock, Inc.*, 2014 WL 1225581, at *2-3 (D.N.J. 2014) (citing *Johansen v. Makita U.S.A., Inc.*, 607 A.2d 637, 642-43 (N.J. 1992).

The complaint contains no factual allegations that would satisfy these elements. It neither addresses the seven factors above nor specifies a defect in the product's design. As with a manufacturing defect theory, a design defect theory cannot be maintained without allegations that the defect existed when the product left the manufacturer's control, the particular defect was the proximate cause of injuries to Deborah Becker, and Deborah Becker was a reasonably foreseeable or intended user.

### Failure to Warn[1]

---

[1] The Court interprets Plaintiffs' Fifth Count for failure to warn as arising under the PLA, rather than common law. Absent a "contractual obligation to warn" that is "materially more rigorous than the duty imposed by statute or when a person other than the manufacturer or seller of the product assumes a duty to warn," the PLA subsumes common law claims for failure to warn. *See*

"A plaintiff asserting a cause of action based on failure to warn must establish all the same elements required for an action based on a defective product." *London v. Lederle Labs.*, 675 A.2d 1133 (App. Div.1996), *aff'd as modified by Batson v. Lederle Labs.*, 702 A.2d 471 (N.J. 1997). In a failure to warn claim, "the defect is the absence of a warning to unsuspecting users that the product can potentially cause injury." *Toms v. J.C. Penney Co.*, 304 F. App'x 121, 126 (3d Cir. 2008) (citing *Coffman v. Keene Corp.*, 628 A.2d 710, 716 (N.J. 1993)). The manufacturer has a duty to warn of "dangers" that it knew, or that it "should have known on the basis of reasonably obtainable or available knowledge." *Feldman v. Lederle Labs.*, 479 A.2d 374 (N.J. 1984). It satisfies that duty by giving "an adequate warning or instruction." N.J.S.A. 2A:58C-4; *see Cornett*, 998 A.2d 543 at 563. The adequacy of the warning is determined in part by "taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used." N.J.S.A. § 2A:58C–4; *Port Auth. of N.Y. and N.J. v. Arcadian Corp.*, 189 F.3d 305, 319 (3d Cir. 1999).

"[B]efore reaching the question of whether the product contained an adequate warning, plaintiff must first establish that there was a latent danger of which the manufacturer had a duty to warn." *Toms*, 304 F. App'x at 127 (citing *Mathews v. University Loft Co.*, 903 A.2d 1120, 1125 (N.J. 2006)). A manufacturer must have "sufficient knowledge to trigger the duty to provide a warning of the harmful effects of its product." *Toms*, 304 F. App'x at 127 (citing *James v. Bessemer Processing Co., Inc.*, 714 A.2d 898, 908 (N.J. 1998)). There is no duty to warn if the danger is obvious. *Mathews*, 903 A.2d at 1128-29.

The complaint does not state specific facts regarding the alleged inadequate warning.

---

*Repola v. Morbark Industries, Inc.*, 934 F.2d 483, 489-94 (3d Cir. 1991) (interpreting N.J.S.A. § 2A:58C–1(b)(2)).

There is no identification of the latent danger, assertion that the danger is not obvious, or allegation that Defendant knew or should have known about it at a particular time. The complaint is silent as to whether Defendant gave a warning that did not reveal a particular danger, gave a warning that was untimely, or gave no warning at all. Plaintiffs do not assert that the inadequacy of the warning was the proximate cause of Deborah Becker's injuries. The complaint does not identify Deborah Becker as an intended user of the product, or state how the warning was inadequate in light of the ordinary knowledge common to intended users.

As Plaintiffs do not plead facts sufficient to support a reasonable inference that Defendant is liable under any theory set forth in the PLA, the Third and Fifth Counts are dismissed.

**Breach of Express Warranty**

> New Jersey law establishes three ways to create an express warranty:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise;
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. § 12A:2–313; *see also Kuzian v. Electrolux Home Products, Inc.*, 937 F.Supp.2d 599, 612 (D.N.J. 2013). Courts have dismissed claims for breach of an express warranty where plaintiffs fail to specify any factual support as to the specific language or source of the alleged warranty. *See, e.g., Schraeder v. Demilec (USA) LLC*, 2013 WL 3654093, at *6 (D.N.J. 2013). "To prevail on a claim of breach of express warranty, a plaintiff must [also] show . . . that the

warranty was relied upon." *See Kuzian v. Electrolux Home Products, Inc.*, 937 F.Supp.2d 599, 617 (D.N.J. 2013) (citations omitted).

Here the complaint contains no factual allegations regarding an express warranty. It mentions neither an affirmation of fact by the Defendant, nor a description of the goods, nor a sample or model which was the basis of a bargain. The complaint does not specify how the device did not function as warranted or how Plaintiffs relied on the warranty. This cause of action must be dismissed.

**Loss of Consortium and Punitive Damages Are Derivative Claims**

"Loss of consortium is a derivative claim which depends for its sustenance upon a viable tort claim of the spouse." *Finley v. NCR Corp.*, 964 F.Supp. 882, 889 (D.N.J. 1996); *see also Banks v. International Rental and Leasing Corp.*, 680 F.3d 296, 300 n.8 (3d Cir. 2012). Likewise, there can be no claim for punitive damages in a products liability case where there is no viable underlying cause of action. *See Oliver v. Raymark Industries, Inc.*, 799 F.2d 95, 97-98 (3d Cir. 1986) (citing Restatement (Second) of Torts § 908, comment c (1979) (in awarding punitive damages "[i]t is essential . . . that facts be established that, apart from punitive damages, are sufficient to maintain a cause of action.")). Because all other causes of action are dismissed, Plaintiffs' claims for loss of consortium and punitive damages are dismissed as well.

**Plaintiffs' Submissions in Response to this Motion Are Unavailing**

Regarding the attachments Plaintiffs submitted with their letter of December 3, 2014, the Court first reminds Plaintiffs' counsel of Local Rule 7.1(b)(2), which requires that all papers in support or opposition to a motion be filed electronically. The Court not only rejects these materials as untimely and improperly submitted, but need not consider them in response to this

Case 2:14-cv-05452-WHW-CLW   Document 10   Filed 01/20/15   Page 10 of 11 PageID: 98

NOT FOR PUBLICATION

motion. A court is generally confined to the four corners of the complaint when evaluating its sufficiency. *See Tri3 Enterprises, LLC v. Aetna, Inc.*, 535 F. App'x 192, 195 (3d Cir. 2013). A trial court does have discretion to accept materials beyond the pleadings. *See In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 315 n.3 (3d Cir. 2003). If a court accepts such materials, it must convert the motion into one for summary judgment. Fed. R. Civ. P. 12(d). With too much discovery required to properly evaluate a claim such as this one, the Court declines to convert the motion into one for summary judgment and declines to accept Plaintiffs' supplemental materials.

**Plaintiffs Are Granted Leave to Amend**

Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962). There has been no prior dismissal of the complaint, Plaintiffs have not previously amended their pleadings, and Defendant has not demonstrated that it would be prejudicial, futile, or otherwise unfair for Plaintiffs to be given leave to amend. Because the complaint was drafted as part of a state court filing, but is now subject to the higher pleading standards applicable in federal court,[2] it is consistent with principles of fairness and justice to afford Plaintiffs an opportunity to file an amended complaint within 90 days of the date of this Opinion.

## CONCLUSION

---

[2] Compare New Jersey's pleading standard: "In considering a motion to dismiss under Rule 4:6-2(e), courts search the allegations of the pleading in depth and with liberality to determine whether a cause of action is 'suggested' by the facts. They must ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." *Printing Mart-Morristown v. Sharp Electronics Corp.,* 563 A.2d 31, 34 (N.J. 1989) (citations omitted).

NOT FOR PUBLICATION

    Defendant's motion is granted. The complaint is dismissed without prejudice. Plaintiffs may file an amended complaint within 90 days of the date of this Opinion.

DATE: 20 January 2015

Hon. William H. Walls
Senior United States District Judge